We'll call the next one. Maney v. Oregon May it please the Court, Robert Koch on behalf of the State Defendants. This is a Qualified Immunity Appeal about the Oregon State Prison's response to COVID-19 across the first two and a half years of the pandemic. Plaintiffs have advanced a singular 8th Amendment claim arguing that the State's response was overall unreasonable. The District Court denied our claim for qualified immunity and in doing so committed three different legal errors. I'd like to begin this morning with the last of the legal errors that we identified in our briefing, the clearly established prong of qualified immunity, because in many ways that's the most straightforward and really exemplifies the legal error that the District Court committed here. The Supreme Court has repeatedly reminded this Court that to defeat qualified immunity, a right has to be clearly established by case law such that every reasonable violation of the Constitution. And plaintiffs in the District Court here cite to this case, this Court's decision in Hampton. The problem is that Hampton actually disavows their framing of an 8th Amendment right as being clearly established. If you look at pages 38 and 39 of plaintiffs' brief, what the District Court says they're asserting and what plaintiffs say they're asserting is a right to a reasonable response to a substantial risk of harm. The problem is that Hampton specifically said that that framing of the right, a risk of harm framing, is far too general for clearly establishing anything for purposes of qualified immunity. The other alternative framing that the District Court and that plaintiffs have used is that they had a right against a heightened exposure to COVID. But that's just a different way of saying that they had a right to less of a risk of exposure to COVID. It still is what they're asserting is this sort of risk of harm standard that is just not, it's far too general for purposes of defeating qualified immunity. And I think this case is frankly a good example of the wisdom of this Court in saying that that's far too general of an assertion. Because if that were the sort of clearly established standard, every state's response to COVID would be a jury question. Because it's, you know, we responded to the pandemic, we did the best that we could. Was that response perfect? Absolutely not. But if the question is whether the response in total is reasonable, there could always be a difference of opinion about whether things were done well enough or perfectly enough. Counsel, do we have jurisdiction to consider this argument, given that the District Court determined that it could not decide qualified immunity because there are material facts in dispute, some of which you've just touched on? Oh, absolutely, Your Honor. Because the question at qualified immunity, it's whether what is being asserted, is it a cognizable constitutional violation? And if so, is what's being asserted, was that clearly established? Were reasonable state officials put on notice in advance that what they were going to do would violate the Constitution? I understand the District Court's ruling, the District Court said, I can't decide whether or not the law was clearly established until I hear more proof. Because there are genuine disputes here as to what the standard was at a particular point in time, whether the defendants were aware of that standard and whether they acted in a way that a jury might find that they were deliberately indifferent to the needs of the inmate. Isn't that the problem we're facing? Well, Judge Tallman, I mean, to be honest, that question sort of underscores the lack of something being clearly established. We're at summary judgment. But this is COVID. I mean, it was like a moving target as to what the protocols should be. I mean, the plaintiffs certainly have a lot of arrows in their quiver to try and show that the prison officials did not act in a reasonable fashion. But you also have some pretty good evidence to suggest that they were not clearly established and that they were doing the best they could based on what they knew at the time about the disease. Why isn't that something that a jury is going to have to sort out? And then the District Court will give appropriate jury instructions to determine, I don't know, maybe a special verdict form to establish the key facts on which the court can then instruct on the law of qualified immunity. Your Honor, that exemplifies why qualified immunity is warranted here. Because you have to hold a defendant liable for damages. They have to be on notice that whatever it is they're charged with doing is going to be unlawful. And if the response by the state officials was constitutionally inadequate, that could raise a claim for injunctive relief under this Court's decision in Parsons. If the response was so poor that we were violating constitutional rights, then they could have brought a claim for injunctive relief. Well, I thought that the key question in immunity is whether the law was clearly established. And the law was clearly established that you had to comply with the applicable standards. Now, what those standards were, as Judge Tallman has suggested, is a question that on the merits there is a dispute. So I actually disagree, Your Honor. There is no case that says you have to comply with applicable standards. And the case that plaintiffs in the district court cite as clearly establishing their right is Hampton. And the difficulty is that Hampton forecloses their framing of the right, as you have to respond reasonably to a risk of harm. What Hampton is about is that you can't expose an AIC to a serious communicable disease. Now, plaintiffs here were exposed to COVID. They all tested positive for COVID. But the passive voice there is really important because we don't actually know how any plaintiff was exposed to COVID. In Hampton, you had a damage claim because the defendant officials there botched a prison transfer in May of 2020, mingling healthy AICs with sick AICs without masking them, without testing them, without quarantining them, socially distancing them. They intermingled healthy and sick AICs, which had been clearly established you cannot do. Here, there were a few steps removed from that. There's no identification of how any plaintiff was actually exposed to COVID. I thought they had allegations, though, of commingling or intermingling, whatever you want to call it, at some of the Department of Corrections institutions. They argue that not enough was done on that front. But I think it's important to remember that we're testing people who were showing symptoms, that they weren't restricting them for access to the yard and keeping them confined in pods in those facilities that had pods. And I guess some of your facilities are more what I'll call traditional prisons with cell blocks, which makes it very difficult. I'm not unsympathetic to the problem that the prison officials face with an aging prison system with different facilities that are of different ages and design. But isn't all that in the mix here that the jury's going to have to parse through? I disagree, Your Honor. I think it's important to emphasize, which we note in our briefing, there are very possibly plaintiffs in this class who have valid Hampton claims and valid Helling claims based on those types of allegations. But plaintiffs aren't advancing that claim because they instead are asserting a right on behalf of 5,000 plus AICs who got COVID across two and a half years. And in order to assert that sort of consistent common claim for all 5,000 AICs, they instead invoke a generalized right to a reasonable response to a risk of harm, which this court has repeatedly said is far too general of clearly establishing anything. And so if there were individual state officials who failed to test, failed to follow masking guidelines, whatnot, and an individual AIC contracted COVID as a result, that would be a Hampton claim. But that's not what's being advanced here. Instead, we're looking at this sort of generalized right to a reasonable response to a risk of harm that this court has already said is far too general to put a reasonable state official on notice of anything. Basically arguing to us that we should reverse the summary judgment because there are not material facts in dispute because the law was such that no prison official could be held to any standard? So we think reversal is appropriate for three different reasons. But in terms of this particular line of inquiry, it's because the law wasn't clearly established to put defendants on notice of what the right that plaintiffs are asserting was violated. They're asserting a right to a reasonable response to a risk of harm. And that is an Eighth Amendment standard. And you can get injunctive relief if that's being violated in some way, shape, or form. But this is a damages claim. And in order to defeat qualified immunity, there has to be case law that clearly identifies that what defendants are doing is going to violate the Eighth Amendment in some way. In Hampton, it was exposing healthy AICs to sick AICs. But again, that's not the claim that's being alleged here. If you look at 38 and 39 of Plaintiff's Brief, they're talking about a reasonable response to a risk of harm, which Hampton expressly said is far too general. And that wasn't even the main holding in Hampton. They were quoting from a decision of this court from 2002. So if anything, it's been clearly established that that's far too general of an assertion to clearly establish anything for purposes of defeating qualified immunity. Unless there are other immediate questions, I'll save the remainder of my time for rebuttal. Very well. Thank you. Good morning, Your Honors. I'm at Pleas the Court, Nadia Dahab for Plaintiffs. I want to make clear further to Your Honors questions about the disputes of fact that are sort of replete across the summary judgment record. What is not at issue in this appeal? This appeal presents a very straightforward, narrow legal question about whether the District Court legally erred in denying defendants' motion for summary judgment on qualified immunity grounds. This is a complex class action case, as the Court is aware from the briefs, that has been pending for five years in the District Court. The District Court has, in April 2023, certified two classes. The rulings on class certification are not at issue in this appeal. In the ruling the District Court issued in April 2024, which is the order from which this appeal arises, the District Court denied summary judgment on several grounds, including on the ground that genuine disputes of material fact foreclosed summary judgment on whether defendants took reasonable measures to abate the risks that COVID-19 presented in the prison setting, whether they consciously disregarded that risk, and whether their actions and inactions caused plaintiffs' injuries. None of those rulings, those rulings and findings that on this record there are disputes of fact that foreclosed summary judgment on those grounds are at issue in this appeal, because this appeal is an appeal under the collateral order doctrine, and this Court's authority is, therefore, narrow. The two primary legal issues that are sort of wrapped up in this appeal are whether plaintiffs legally stated claim under the Eighth Amendment, and whether defendants' actions and inactions violated clearly established law. Now, I'll start where opposing counsel started off, which is whether there was clearly established law here. And I want to clarify the right that plaintiffs have identified as the right that is clearly established by this Court's and the Supreme Court's case law. And that is the right that is articulated in Hampton at page 769 of Hampton, and that is the right at issue is an inmate's right to be free from exposure to a serious disease. Hampton says in the same paragraph, that right has been clearly established since at least McKinney. We are not alleging a right to a reasonable pandemic response. We understand that the Supreme Court has said many times over and has admonished courts that they need to define the clearly established right at the appropriate level of generality. The right to a reasonable response is just the Eighth Amendment standard. The defendants were obligated to reasonably abate the risk that COVID presented. And the district court thought that it needed to have that issue decided by the jury because there were contested issues of material fact. The district court did two things. That is correct, Judge Tallman, as to whether defendants reasonably abated the risk. Absolutely. The district court found, and this is at ER 76, which is the portion of the district court's order addressing the right that is clearly established. The district court found that the clearly established right here is the same that the court found in Hampton. And similarly found expressly that clearly established right has been established since Helling. Then the district court turned to the nature of defendant's response. And as Judge Tallman, you point out, there are disputes of fact all over this record about whether defendants system-wide adequately implemented the policies that they had adopted or adopted policies at all with respect to various non-pharmaceutical interventions to COVID, mixing, quarantining, masking, social distancing, all of those things that the expert reports in this record point out were necessary and necessary pursuant to CDC guidance to implement in the congregate prison setting. But that's a question, again, that is not before this court. The real question, the only question, is whether, as to this clearly established right, was the right clearly established? And I think Hampton is a published decision that is binding on this court that, in our view, is on all fours with the case that is before your honors today. I want to touch also on the, sort of more broadly speaking, the right, the Eighth Amendment right, because my friend talked about the nature of the right in both their brief and in his opening statement here about the right that plaintiffs had to an omnibus or an aggregate of the right. A couple of things. The Eighth Amendment standards are very clear and they govern in this case, right? The Helling standard that the Eighth Amendment provides scrutiny over prison conditions and the conditions that prisoners face when they're in custody are all subject to Eighth Amendment scrutiny. Under Wilson v. Sider, the Supreme Court has told us that plaintiffs can, under the Eighth Amendment, challenge a series of policies or combinations of conditions that may give rise to a substantial risk of harm. Well, we said in Hampton, this, what's troubling me a little is the level of generality. We said in Hampton that in light of all these cases, and we went through Hallett in all of these cases, said, we said all reasonable prison officials would have been on notice in 2020 they could be held liable for exposing inmates to a serious disease, including a serious communicable disease. Although COVID-19 may have been unprecedented, the legal theory that plaintiff asserts is not. Now, why is that not too general a standard if we're looking at this from the standpoint of trying to avoid being reversed by the Supreme Court? Sure. I think the level of generality here is correct. And there's no bright, obvious this, Your Honor, no, there's no bright-lighting rule here about how to define or how to approach the level of generality. We know that it can't be the right to be free from, the right to a reasonable pandemic response, the right to be free from a substantial risk of harm, or the right to be free from deliberately indifferent policies, or the right to constitutionally adequate conditions of confinement. But it also can't be so specific, and this Court said in Nelson v. The City of Davis, that it becomes applicable only to the particular facts of the case. And it can't be such that defendants can sort of define away liability by making the facts. What takes this out of generality? Is it too general? Is it because we're talking about a specific disease? COVID? That doesn't seem like that works. If I'm understanding, I'm not sure that I'm totally understanding that specific question. I think this is specific enough in the sense that it does apply only to serious communicable diseases. Well, that's pretty general. I'm sorry? That's pretty general. I think I would respectfully disagree. I think it's sufficiently specific. It's specific enough to not include exposure to general environmental toxins, exposure to asbestos, things of that nature. It's specific to serious diseases. And defendants, I think, aren't necessarily left to guess on what a serious disease is, the seriousness of a medical condition or seriousness of a disease has to be communicable. And I think defendants here, as was true in Hampton, were aware at the time of the events giving rise to that case, the seriousness of the disease. There's actually no dispute on this record, on this particular record, as to the seriousness of COVID during the class period issue. But just as a practical matter, defendants in Hampton were told by public health officials, this is a serious disease, and these are the steps you need to take to respond. The same was true here. Defendants were told by their own infectious disease specialist, this is a serious disease, and social distancing and other countermeasures need to be taken to address the risk to AICs in this context. So I think the seriousness and the communicable disease part make it sufficiently specific, but not so specific that it sort of defines a way defendants' liability in future cases. But isn't the heart of your claim the reasonableness of the official's response? You're not going to get a directed verdict at the close of the plaintiff's case on the ground that there is a generalized right on the part of inmates to be protected from contracting serious diseases while they're in custody. The question is, under the Eighth Amendment, whether or not the conduct of the prison officials was reasonable enough to refute what you want the jury to find, which is that they acted with deliberate indifference to the right of the inmates to be protected from COVID. That's absolutely correct, Judge Tallman. We're talking about the pure legal question of clearly established law in this appeal. But the heart of our claim, as you pointed out, is the reasonableness of the response, whether defendants acted to reasonably abate the risk that COVID presented or whether they consciously disregarded that risk. And that's what the district court said is in dispute, and I can't grant summary judgment here until I get these facts resolved. Absolutely, absolutely. There are several different disputes of fact about the centralized nature of the policies and whether the policies were implemented on a system-wide basis, all of which the district court found, and I think this court is at least bound to or lacks jurisdiction to reconsider in this appeal, were triable issues of fact for the jury. Unless the court has further questions, we would request that this panel affirm the district court's judgment. Thank you. Thank you, Counsel. Your Honors, I'd like to focus on one thing that plaintiffs say that their claim is about exposure to COVID, but that's actually not true because there's no allegation about how they were exposed to COVID, there's no evidence about how they were exposed to COVID, and that's why what they have framed their right as. I'm a little confused by the argument because don't they have allegations in the complaint about intermingling of people who were symptomatic with people who had not yet tested positive for COVID and then later tested positive? They have allegations that we didn't do enough policy-wise, but they never identify how any plaintiff got COVID. That's their injury. But they're going to point to things like you didn't require masking, you didn't provide for adequate social distancing, you didn't reopen a couple of facilities that you had closed, you didn't open the gates of the prison and release some of the nonviolent offenders in order to reduce crowding. That all goes to the reasonableness of the official's response and whether or not they were deliberately indifferent. But it's important, the reasonable response to what? What Hampton said is that it's a reasonable response to the exposure of an AIC to a serious communicable disease. But what plaintiffs have alleged and what the district court framed the right as is a right not to have a heightened exposure, basically an increased risk of exposure to COVID. But doesn't that come if the plaintiffs are able to successfully establish that, for example, inmates were not confined to the pod that they were housed in, they were still allowed to go to the chow hall, they were still allowed to go out into the general exercise yard where they mingled with other prisoners? I mean, that's the kind of proof I would expect them to offer at trial in support of their claim. I would expect that would be proof for an individual AIC's Hampton claim. But again, what we're looking at here is a singular claim over the span of two and a half years, whether the state did enough. And what they're alleging is that you didn't do enough to decrease our risk of getting COVID. But you're going to respond with the fact that the Department of Corrections put together a task force which met on a daily basis and went out and talked to infectious disease specialists to try and get some advice on how to address the problem. And they're going to say that was not adequate. They have experts to say you should have done more, or you should have listened to some of the recommendations that were made that for whatever reason were not implemented. That's the legitimacy of the facts that are in dispute. That goes to whether the overall response was reasonable. But isn't that the heart of the case? No, Your Honor. To defeat qualified immunity, the asserted right has to be clearly established. But are you saying that there is not a clearly established right to protect adults in custody from exposure to infectious diseases? There is for injunctive relief purposes, but this is a damaged claim. And so the damage is, as the court clarified and emphasized in Hampton, you have a, in fact, to quote from it, it is not sufficient that Farmer clearly states the general rule that prison officials cannot deliberately disregard a substantial risk of serious harm to an inmate. But that's far too general for establishing a right for qualified immunity purposes. This isn't just a serious harm. I mean, this is a specific communicable disease. It is, Your Honor. And if an AIC got COVID, that is because of the actions of defendant state officials, then they can bring a Hampton claim. But what plaintiffs are asserting here is an omnibus claim for the entire scope of the pandemic to say you weren't reasonable enough to reduce my risk of harm of getting COVID. And they're going to point to the deaths that resulted and the numbers of inmates that tested positive. And, I mean, they've got a whole slew of bad things that flowed, allegedly, from the acts or omissions of the prison official. Why doesn't that state a putative Eighth Amendment claim? Because risk of harm is too general of an asserted right to be clearly established for purposes of the Eighth Amendment. If defendant officials exposed individual AICs to COVID, then they can bring a Hampton claim. But that's not what plaintiffs have alleged. Suppose it was an outbreak of typhus or something and the prison officials did nothing. Well, then two things. One, you'd have a great claim for injunctive relief under Parsons. But no claim for damages? No, you would. And I'm sure that there would be a boatload of Hampton-type claims there. Plaintiffs have never identified how any of them were exposed to COVID. And that's what's so different about this case from Hampton. In Hampton, you had an AIC who got COVID in May 2020 because the defendant state officials botched a prison transfer, mingling healthy AICs with sick AICs. There's no identification here how the actual— There's no allegation, much less evidence of exposure. You don't think the allegations are sufficient, that they didn't confine people to areas of the prison? They allowed them basically to mix with the other inmates in the yard and in the chow hall? No, the problem is that— And there's a reason why there's no allegation, much less evidence, about any actual exposure. And if I'm cognizant, I'm well over.  Okay. So the reason why there is no allegation, much less evidence of exposure, is because they're asserting a class claim. And the specifics of any actual infection are going to be time-specific, person-specific, location-specific. And to get around that, they instead are asserting this generalized right about a substantial risk of harm. The problem is that that framing is far too general to put any defendant on notice. And so either one of two things are true. So if they actually are asserting a claim about exposure, then they don't have standing, because there's no indication of how any of them actually were exposed to COVID, much less tracing that back to any active defendant. Or they're asserting this generalized right to a reasonable response to a substantial risk of harm from COVID. But Hampton expressly said that that's far too general to clearly establish anything for purposes of defeating qualified immunity. Unless we ask this Court to reverse the denial of qualified immunity. Thank you. All right. Thank you to both counsel. I understand this was Graber versus Graber. Am I correct about that? Most of you don't know what I'm talking about. Judge Graber's portrait's on the wall up there, and both of them were law clerks for Judge Graber. And I'm sure she'll watch the video, and I'm sure she'll be very, very proud of both of you, how you argued and briefed this case. So thank you both. This matter is submitted.
judges: SCHROEDER, TALLMAN, OWENS